## Enfield, Appellant, *v.* Stout.

Argued March 21, 1960. ·Before JONES, C. J., MUS-
MANNO, JONES, COHEN, BOK and ·EAGEN, JJ.

*Joseph N. Cascio,* with him *Paul E. C. Fike,* and *Fike and Cascio,* for appellants.

*Frank S. Lucente,* for defendant, appellant.

*Frank A. Orban, Jr.,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 23, 1960:

This matter involves two appeals in separate actions, arising out of an automobile accident, which were consolidated for the purpose of trial in the court below.

The first case presented in the lower court was that of the Stouts against Donald Lee Enfield. Plaintiffs put in their case. Defendant (the additional defendant, as such, has no interest in this appeal) moved for a compulsory nonsuit and, it being denied, rested without presenting any evidence. Thereupon, defendant moved for a directed verdict. It, too, was denied. Whereupon, the taking of testimony in the case of the Enfields against the Stouts commenced. The jury returned a verdict for the plaintiffs in the first suit and a verdict for the defendants in the second. At this juncture counsel for Donald Lee Enfield, defendant in the first suit, moved for a judgment *non obstante veredicto.* This motion was denied and judgment entered upon the jury's verdict. Counsel for the Enfields, plaintiffs in the second suit, moved for a new trial.

This was denied and judgment entered upon the verdict. These appeals followed.

On May 13, 1958, at approximately 10:15 p.m., a dark but clear night, a Pontiac convertible, travelling westwardly on Legislative Route #55058 in Somerset Township, came into violent collision with a Dodge truck which was proceeding southwardly along Pleasant Hills Road (a "side road") at its intersection with the aforesaid Legislative Route. A stop sign, erected on the northwest corner of the square, controlled traffic moving in the direction of the truck.

At these corners the terrain is generally level, the only exception being a "dip" in the east-west through road. The westernmost lip of this depression is three hundred feet east of the intersection in question and visibility from this point into the intersection is unobscured. A car, while in this declivity, is momentarily cut off from a view of the corners in question and, likewise, is hidden from the sight of motorists stopped at or about the stop sign above referred to. This pitch in the road excepted, a view from the northwest section of the corners to the east of three-tenths of a mile is unimpaired.

The driver of the truck, Donald Stout, brought his vehicle to a complete halt in obedience to the stop sign. His father, James, was a passenger. Frances E. Stout, mother and wife respectively of the driver and occupant, was the owner of the truck. The father alighted from the vehicle to adjust chain binders which kept a load of timbers fastened to the flat bed of the trailer section. He stood in front of the truck and looked up and down the road. He then hopped onto the running board on the passenger's side, again looked up and down the through road and, seeing nothing coming, told his son, "Go ahead and pour the oil to her; the road is clear both ways." The son then looked both

ways, himself, and, seeing nothing coming, started into the intersection. He shifted from "low" into "second." Suddenly and when the truck had travelled approximately only ten feet, there was a terrific "explosion." They did not know what had hit them. They never saw the Pontiac car. The truck was damaged, the two occupants injured. The Pontiac was practically demolished and all three occupants hurt. The truck, following the impact, came to a stop approximately ten feet from the estimated point of contact and faced westwardly on the northernmost lane of the through road. The car was thrown twenty feet into the southwest corner of the intersection and straddled a culvert there located. Lumber was strewn all over the road. The accident occurred in the northwest quadrant of the intersection. The testimony of the two Stouts, together with that of a passerby, establishes that the lights of the truck were on at the time in question. There is some evidence indicating that young Stout blinked his headlamps, i.e., put them on "low beam," before entering the intersection.

The testimony in support of the Enfields' claim is substantially as follows. The car, operated by Donald Lee Enfield, in which his brother, Ronald Enfield, and Dale E. Maust were passengers, was travelling in a westerly direction at a speed of approximately forty-five miles per hour, with its headlights in operation. When the car came out of the dip, described above, and had arrived at the leveling-off part of the road and reached a point, estimated to be approximately one hundred feet from the intersection, the truck was observed for the first time, pulling into the intersection. The operator applied his brakes but before the automobile could come to a stop, it ran into the truck. These facts were testified to by Ronald Enfield, a passenger. The operator of the automobile and the other

guest were seriously injured, and testified that they had no recollection of what happened immediately before or after the collision.

The jury verdict favored the Stouts and, specifically, found Donald Enfield guilty of negligence and Donald L. Stout free from negligence.

In support of the motion for judgment n.o.v., it is argued that there is no evidence to support a finding of negligence on the part of Donald Enfield and also that the testimony convicts the Stouts of contributory negligence as a matter of law. We cannot agree. It appears to us that these were questions for the jury.

For many years under the law of Pennsylvania it has been the rule that the driver of an automobile on a public highway must be alert to have it under such control that he can stop it within the "assured clear distance ahead." This requires that the driver operate his automobile at such a rate of speed and in such a manner that he can always stop it within the distance that he can clearly see: *Metro v. Long Transportation Company*, 387 Pa. 354, 127 A. 2d 716 (1956). By this is meant the range of the driver's vision which, of course, in darkness is the scope of his headlights: *Weibel v. Ferguson*, 342 Pa. 113, 19 A. 2d 357 (1941). In this case, when the Enfield car came out of the dip, there were approximately three hundred feet separating it and the Stout truck, then at the intersection. Whether or not the operator, Donald Enfield, saw it at that moment the record does not disclose. The passenger, Ronald Enfield, did not see it until the Enfield car was approximately one hundred feet way, and apparently the brakes were not applied until or after this moment. This, apparently, was too short a distance within which to bring the Enfield car to a stop or to give the operator sufficient opportunity to avoid the collision. The question naturally arises: was the En-

field car under proper control? The above circumstance, coupled with the testimony of the Stouts that they saw no lights of any automobile approaching on this highway (in effect saying that the Enfield car was travelling without lights burning) made the question of negligence on the part of Donald Enfield one of fact for the determination of the jury. While the driver of an automobile on a through highway may properly assume that one approaching that highway on a stop street will perform his legal duty to stop and yield the right-of-way (*Rowles v. Evanuik*, 350 Pa. 64, 38 A. 2d 255 (1944)), still the right-of-way on a through highway is a qualified one and the driver of an automobile thereon must take such precautions in regard to the control and speed of his car and keeping an alert lookout for cars approaching the intersection as a reasonably prudent man solicitous of his own safety would take: *Martin v. Hoffman et al.*, 365 Pa. 364, 75 A. 2d 529 (1950). It is also argued that Donald Stout did not continue to look as he drove the truck out into the intersection. This, of course, would constitute negligence (*Papkin v. Helfand and Katz*, 346 Pa. 485, 31 A. 2d 112 (1943)), but a close examination of this witness's testimony does not warrant such a conclusion and we must keep in mind that the collision occurred almost immediately after the instant the truck started into the intersection. Declaring an individual guilty of contributory negligence as a matter of law should be done only where the conclusion is inescapable: *Kurtz v. Philadelphia Transportation Company*, 394 Pa. 324, 147 A. 2d 347 (1959).

In support of the motion for a new trial, counsel for appellants contend that the trial judge erred in his charge to the jury by submitting issues which were not substantiated by the evidence and inadequately instructing in other respects.

It is strenuously argued that the trial court erred in submitting to the jury the question of the operation of the Enfields' car without lights, particularly in view of the fact that one of Stouts' own witnesses (Coddington) testified that he passed the Enfield car at a point approximately six hundred feet from the point of the accident and that, at that moment, the lights on this car were in operation. James E. Stout testified that when he looked for approaching traffic on the through highway, he did not see any automobile lights thereon and that if there had been any he would have seen them. Donald Stout testified that, immediately before starting the truck into the intersection, he looked both ways and didn't see any lights of an approaching automobile. This is not as counsel contend negative testimony amounting to a mere scintilla as a matter of law. Such testimony is positive in character and substance and its strength, or probative weight, was for the jury. In determining whether testimony is negative or positive in nature, all of the attending circumstances must be considered, such as the opportunity of seeing, the occasion for looking, the alertness of the witness and whether all the existing circumstances tended to show that if the thing in question had happened the witness probably would have seen it: *Ferruzza v. Pittsburgh,* 394 Pa. 70, 145 A. 2d 706 (1958); *Kindt v. Reading Company,* 352 Pa. 419, 43 A. 2d 145 (1945).

As to alleged inadequacies in the court's instructions, an examination of the record discloses that only a general exception to the charge was entered of record and, when asked by the court if any further instructions were desired, counsel remained silent and made no such requests. It is fundamental that litigants will not be permitted to take a chance on the verdict and then, as by afterthought, take advantage of alleged errors in the charge which they had previous oppor-

tunity to have corrected: *Lyons v. Wargo,* 386 Pa. 482, 126 A. 2d 411 (1956). It is also established beyond argument that where only a general exception is taken to the charge, appellate review of error in the charge is limited to basic and fundamental error, which misled the jury to a party litigant's prejudice: *Harman v. Chambers,* 358 Pa. 516, 57 A. 2d 842 (1948); *Omek v. Pittsburgh,* 387 Pa. 128, 126 A. 2d 425 (1956). We have carefully studied the charge of the court and find nothing that could be fixed in this category.

In addition, an examination of the record also discloses that the alleged assignments of error were not raised in the court below. The motion for a new trial contained only the usual four formal reasons and none of the alleged errors in the charge of the court were even mentioned. Permission was granted to file additional reasons after transcription of the record but none were entered of record. It is axiomatic that a reason for a new trial not assigned as error in the court below may not be raised and will not be considered for the first time on appeal: *Risbon v. Cottom,* 387 Pa. 155, 127 A. 2d 101 (1956); *McCann v. Hedin,* 377 Pa. 508, 105 A. 2d 594 (1954); *Keane v. Philadelphia,* 360 Pa. 384, 61 A. 2d 834 (1948).

The judgments entered in the court below are affirmed.