Alex MITSOS

v.

**UNITED STATES of America, Appellant,**

v.

**LAMP CONTRACTING COMPANY.**

No. 74–1920.

United States Court of Appeals, Third Circuit.

Submitted March 6, 1975.

Decided May 20, 1975.

Stephen J. Harris, Litman, Litman, Harris & Specter, P. A., Pittsburgh, Pa., for appellee.

Richard L. Thornburgh, U. S. Atty., Henry G. Barr, James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellant.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Alex Mitsos, an employee of Lamp Contracting Company (the Contractor), brought a personal injury action against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2674 (1970). The United States denied negligence on its part and joined the Contractor as a third-party defendant, seeking contribution to the extent of the Contractor's liability under the Pennsylvania Workmen's Compensation Law.

During the Spring and Summer of 1971, the Pennsylvania Department of Transportation engaged the services of the Contractor to paint ramps and bridges in downtown Pittsburgh, including a bridge near which plaintiff was injured. This bridge is part of a highway interchange and carries traffic over an exit ramp (Crosstown ramp) off Crosstown Boulevard. In order to support aluminum platforms on which workmen positioned themselves while painting the bridge, a one-half inch cable had been suspended six inches below each side of the bridge's superstructure. The cables were fastened to the columns supporting the bridge and, in addition, were prevented from sagging by several three-quarter inch ropes running up to the bridge's handrail.

On Sunday afternoon, August 8, 1971, the time of the accident which gave rise to this action, the painting had been finished and the aluminum platforms taken away. Plaintiff and his fellow employees had removed one cable and were in the process of removing the other. While so engaged, a large government mail truck proceeding down the Crosstown ramp toward the bridge came into contact with the cable, knocking plaintiff from his ladder and causing him serious injury.

The United States District Court for the Western District of Pennsylvania, sitting without a jury, found the truck driver negligent in failing to observe the cable and stop before coming in contact with it. The district court also found that the Contractor negligently failed to warn traffic on the Crosstown ramp of the danger presented by lowering the cable. Judgment was entered awarding plaintiff $30,000 in damages against the United States and directing contribution by the Contractor. The Government appealed; we reverse.

■ We believe the district court erred in determining the legal duty against which to measure the truck driver's conduct.[1] The district court, citing Enfield v. Stout, relied upon Pennsylvania's "assured clear distance ahead" rule. 400 Pa. 6, 11, 161 A.2d 22, 25 (1960). This rule imposes a duty upon a driver to operate his vehicle "at such a rate of speed and in such a manner that he can always stop it within the distance that he can clearly see." *Id.* Before the "assured clear distance ahead" rule can be invoked, however, a driver must be under a duty to anticipate the danger which led to the accident. *See* Fleischman v. City of Reading, 388 Pa. 183, 130 A.2d 429, 431 (1957).

■ Under the law of Pennsylvania, a driver is not under a duty to watch for wires stretched across the highway unless effective and timely warning of their presence is given. *See* McKee v. Jamestown Baking Co., 198 F.2d 552, 555 (3d Cir. 1952); Brown v. Krakowski, 68 D. & C. 501, 512, 516 (Pa.Ct. Common Pleas 1949); 2 D. Blashfield, Automobile

---

1. Since both the alleged acts of negligence and the injury occurred in Pennsylvania, the law of that state governs this action under the Federal Tort Claims Act. *See* Fisher v. United States, 441 F.2d 1288, 1289 (3d Cir. 1971); 28 U.S.C. §§ 1346(b), 2674 (1970).

Law and Practice § 104.1, at 265 (3d ed. 1965). In the instant case, the district court found as a fact that neither a flagman nor signs were positioned on the Crosstown ramp to warn traffic of the impending removal of the cable. The only indication that anything unusual was occurring near the bridge was the presence of four workmen. However, Ralph E. Posey, the operator of the mail truck, had driven beneath this very underpass without incident on numerous occasions when workmen were present. Nothing in the record indicates that, on the day of the accident, the location or actions of the workmen[2] in any way signaled the existence or the lowering of the cable. *Cf.* Brown v. Krakowski, *supra*, 68 D. & C. at 512–13.

■ Even had the truck driver been under a duty to watch for a cable, this record is insufficient to support liability. Apparently relying on certain photographs of the ramp submitted by plaintiff's counsel pursuant to court order,[3] the trial judge assumed that because of the Crosstown ramp's fifteen degree downgrade, the driver of the mail truck would not have had to look up to see the cable "but in fact would have been able to see it by looking straight ahead." No evidence, however, was adduced at trial showing that the cable suspended under the overhead ramp would have been visible from a vehicle on the Crosstown ramp. The only direct evidence concerning the visibility of the cable was the testimony of Sergeant Rooney of the Allegheny County police. In response to a question from the court, he stated that the cable was virtually undetectable and looked like a part of the bridge's structure.

We also question the accuracy of the trial judge's assumption that drivers do or should direct their attention along a level plane regardless of the road's grade. We note that the Crosstown ramp as it descends also curves rather sharply to the left immediately before passing under the bridge. The bridge and cable thus ran in a direction parallel to the Crosstown ramp until the curve. Consequently, an approaching driver, even assuming he directed his eyes to the left along a level plane, would not have been afforded a perpendicular view of the cable until he reached the curve. We note, moreover, Posey's testimony that, as he was driving his truck down the ramp, his attention was directed to the flashing taillights of three automobiles coming to a halt at the end of the ramp.

The district court did not find, nor does the record indicate, when the cable dropped in the path of the mail truck. The cable had been installed at least fourteen and one-half feet about the Crosstown ramp and the mail truck had a clearance of ten feet, ten inches. When the truck came in contact with the cable, the cable was ten feet off the ground.

Plaintiff testified that the accident occurred shortly after he loosened the first of two bolts holding the cable in place. He also testified that other large trucks had passed safely under the cable before the accident. We believe this testimony is insufficient to support the inference that, by the time the mail truck came within stopping distance of the bridge, the cable already had dropped into the truck's path. The inference is at least equally strong that the cable dropped almost at the moment the truck reached the underpass.

We conclude that the district court's finding of negligence was based upon an inaccurate conception of the law and upon an insufficient record. We therefore hold that the plaintiff failed as a matter of law to prove negligence on the part of the truck driver.

The judgment of the district court will be reversed with directions to enter judgment in favor of the United States.

---

2. Two workmen were located on the bridge where they could release the ropes supporting the cable. Plaintiff stood atop a ladder placed against one of the columns under the bridge. Another workman stood at the foot of the ladder.

3. The photographs were filed after the close of evidence.