Weibel *v.* Ferguson, Appellant.

Argued March 31, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*J. Roy Dickie,* with him *H. A. Robinson, H. J. Nesbit,* and *Dickie, Robinson & McCamey,* for appellant.

*Frederic G. Weir,* with him *John F. McDonough* and *Leo Daniels,* for appellee.

114

The action was trespass for the death of plaintiff's husband, fatally injured by an automobile while he was crossing a public highway thirty feet wide. A verdict for the plaintiff was set aside, presumably for inadequacy, and a new trial was granted. Defendant's motion for judgment n. o. v. was overruled. This appeal is from that order: *Fornelli v. Pennsylvania R. R.*, 309 Pa. 365, 164 A. 54.

Plaintiff's husband, a passenger in a northbound bus through the village of Glenshaw, alighted from the right-front door of the bus at Witmer Stop. The bus had stopped partly on and partly off the paved portion of the highway at a place that was also within the lines of a side road extending eastward, but which did not cross the main highway. Immediately opposite the stopping place, on the left or west side of the main highway, and set back a short distance from it, was the Sava Inn, to which the man apparently intended to go. A woman passenger also alighted immediately behind him and walked eastward on the side road. She saw the man walk back, that is, southward, along the right side of the bus, which, meanwhile, started northward. After she had traveled about twenty-five feet down the side road she heard a crash. Plaintiff's husband was found lying to the left or west of the highway. The place where the bus stopped on the right side of the highway and the Sava Inn on the left side, are on a rather wide curve, the bus stop on the outside and the Inn on the inside of the curve. The road was a three-lane highway. The weather was drizzling rain, and misty. Mrs. Eichhorn, who followed plaintiff's husband out of the bus, testified that he "walked on the length of the bus and around the rear" and "went the opposite direction" from that in which she was going. She said that, as she turned, she looked northward on the highway and "had seen the reflections of a couple of cars coming up . . . 300, 350 feet . . . coming from the north to the

south" after the bus had started northward; the bus, then, must have moved along far enough not to obstruct her view northward.

A witness, Seelnacht, describing the course of the road, said it had "a wee bit of a bend for about, well, above that [place of accident] say at least over a thousand feet above that." He describes the place where Weibel's body was found as off the paved portion of the highway. Another witness, Barndollar, says the body was "off the road four or five feet . . . on the side [of the inn] where they have the driveway into the hotel. . . ." Another testified that defendant's car was damaged on the right side: "The right-hand light was pushed back, and the fender had a dent in it."

If no other facts had appeared, there would of course have been no liability for want of evidence of negligence. To prove negligence, plaintiff called Mrs. Camplin who testified that on the night of the accident she talked with the defendant, who said to her: " 'I was going to town; it was raining, and I was coming into the curve, and the lights blinded me. About 30 feet ahead of me I saw a man. I got confused; I couldn't stop; I hit him, or the car hit him. He went up in the air, he came down on the hood of my car and rolled on to the cinders.' Q. Did I understand you to say that he said it was raining? A. It was misting or drizzling, to that effect he said. 'The lights blinded me.' " In cross-examination she said: "Q. Did Mr. Ferguson say in this conversation what lights it was that blinded him? A. I don't remember. I don't remember just exactly. He may have said the car lights or the bus lights, I don't remember that. Q. You are not sure about that? A. No, sir. Q. That is the impression you got from him at any rate? A. Yes, sir, because they were coming up the road. Q. And he said that was just as he coming into the turn? A. And he was coming into the turn, coming into the curve." The plaintiff testified that on the same night she had a conver-

sation with the defendant: "He asked me if I was Mrs. Weibel and I said yes, and he said, 'Well, I am the young man that hit your husband.' I said, 'Well, how in the world did it happen?' He said, 'Well, I had a date and I was late. I was driving pretty fast and the lights of the bus blinded me, and I went off the curb and hit the man,' and he didn't see him until he was on top of him almost and hit him. . . . Q. Did he say where Mr. Weibel was on the road when he hit him? A. About 20 or 30 feet in front of him when he saw him, and he no more than saw him until he hit him. He got confused, he said. . . . Well, he said, 'I am the young man that hit your husband.' I said, 'How did it happen?' He said, 'I had a date and I was driving pretty fast. I was late, and I didn't see Mr. Weibel until I was almost on top of him,' and he said, 'He looked at me and I looked at him, and I got confused and stepped on the gas instead of the brake and went off the curb and hit him.' " Charles O'Connor, described as "an investigator," testified that six days after the accident defendant told him "It was raining, it was a little foggy and the road was wet. . . . Q. How fast did he say he was going? A. Between 30 and 35 miles an hour. Q. And did he tell you whether anything happened from that point as he was driving down? A. Yes. Q. What did he say? A. He said that just as he was entering the curve the lights of a bus moving toward Butler shone on his windshield and slightly blinded him. Q. Did he tell you whether or not his car hit Mr. Weibel? A. Yes, sir, he did. Q. After the lights blinded him what did he say happened? A. That just as he got opposite what he called Sam's restaurant he saw a man on the road in front of him, about a car length in front of him—that is the length of his own car—and that he attempted to pull to the left to go around the man but that the front of the car struck him. Mr. Dickie: Q. To what? A. The car struck him and he seemed to fall over the right front fender of the

car and off to the right. Mr. Weir: Q. Did he state at what speed he was traveling when he saw the man a car length away? A. Yes. Q. What speed did he say? A. Thirty to thirty-five miles an hour."

The two accounts of the occurrence, that given by Mrs. Camplin and Mrs. Weibel, and that given by Mr. O'Connor, as related to them by the defendant, are not quite the same. The appellant-defendant contends that as it is impossible to say from which of the accounts of the accident the jury inferred his negligence, plaintiff has not sustained the burden of proof; he invokes the principle that if the evidence be so contradictory in essentials that any verdict based on it would be a mere guess, the jury should not be permitted to consider it, citing *Ginocchietti v. Lehigh Valley Railroad*, 338 Pa. 507, 509, 12 A. 2d 919, and cases there cited. We all agree that the evidence in this case is not within the principle relied on.

In charging negligence, the statement of claim had averred that while exercising due care in crossing the highway, "when he [Weibel] had almost and practically completed crossing said highway and when he had reached the extreme westerly side thereof he was struck violently and with great force by the right front fender and right front headlight of the [car] of the defendant traveling in a southerly direction on said Route No. 8 at the point aforesaid, and the force of this collision caused the deceased, . . . to be thrown to the right of said automobile onto the dirt and ground adjacent to the westerly side of said highway, . . . SIXTH: The negligence and carelessness of the defendant, Wilbur L. Ferguson, at the time and place aforesaid, was the sole and proximate cause of the aforesaid collision and of the death. . . ." The averment of negligence was further separated into details as to excessive speed, failure to keep his car under adequate control, failure to give warning, reckless driving, etc.

If the jury accepted defendant's account, as given on the night of the accident to Mrs. Camplin and Mrs. Weibel, the jury might well find that he was late for his engagement, "driving pretty fast" and, hindered by the weather and the bus lights, "went off the curb and hit the man"; that defendant's car left the paved portion of the highway and struck Weibel who had completed the crossing and left the highway. That, of course, made a case for the jury under the averments in the statement of claim.

On the other hand, if the jury accepted the facts stated by defendant to Mr. O'Connor six days later, that he was traveling between 30 and 35 miles an hour, "slightly blinded" by the bus lights, so that when "he got opposite what he called Sam's restaurant he saw a man on the road in front of him" and then struck the man, a verdict of negligence also within the averments of the statement of claim would also be supported. This follows because the jury may have found from Mrs. Eichhorn's evidence that the bus started northward before Weibel started to cross; in that event the bus must have traveled some distance before its lights could affect the vision of the defendant traveling southward at a rate of 30 to 35 miles an hour in another lane of the three-lane highway. Not only is there no evidence that any other car moved northward whose lights might have affected defendant but defendant's statement is that it was the bus lights that "slightly blinded him." If so, the jury may have found that the blinding occurred considerably north of the place of collision and not just before reaching the point where he first saw Weibel 30 feet in front of him. In such circumstances the effect of the lights, as an element in the transaction, was for the jury: *Farley v. Ventresco*, 307 Pa. 441, 445, 161 A. 534. It is of course well settled that a driver must maintain such control over his car as to enable him to stop within the range of his headlights however much his visibility may be impaired by storm, darkness,

fog, curve in the road or other conditions: *Hutchinson v. Follmer Trucking Co.*, 333 Pa. 424, 427, 5 A. 2d 182; see also *Mason v. Lavine, Inc.*, 302 Pa. 472, 477, 153 A. 754. Defendant was conscious of the weather conditions, the curve in the road and the wet or slippery surface; there is no evidence of any emergency not created by his own conduct which would diminish the degree of care ordinarily exercisable by him: compare *Simrell v. Eschenbach*, 303 Pa. 156, 161, 154 A. 369. Both of defendant's declarations to the witnesses support averments in the statement of claim.

In view of what has been said, it is obvious that decedent cannot be held, as matter of law, to have been guilty of contributory negligence.

The order refusing the judgment n. o. v. is affirmed.