## Metro, Appellant, *v.* Long Transportation Company.

Argued November 26, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James P. McArdle,* with him *James E. McLaughlin,* for appellant.

*Wallace E. Edgecombe,* with him *Van Der Voort, Royston, Robb & Leonard,* for appellee.

OPINION PER CURIAM, December 29, 1956:

The plaintiff recovered a verdict against the defendant, which the court below set aside and entered judgment for the defendant, n.o.v.

We affirm this judgment on excerpts from the opinion of Judge KENNEDY as follows:

"On ruling on a motion for judgment n.o.v. we are required to view the testimony in the light most advantageous to the plaintiff and to resolve all conflicts therein in his favor and he is to be given every benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence; and in addition the plaintiff is entitled to have the evidence supporting his verdict considered and all the rest rejected.

"The evidence thus offered by the plaintiff establishes that on the morning of November 4, 1949 at and

before 9:15 a.m. the decedent [twenty-one years of age] was driving a tractor-trailer combine in a westerly direction on the Pennsylvania Turnpike. The weather was dry and clear and visibility was good. The decedent emerged from the western exit of the Sideling Tunnel at which place the roadway is level for a short distance, and then there is a descending grade on which there is a slight curve and from the bottom of this roadway at this point a long gradual straight ascending grade starts. (Two percent grade by survey measurement. The accident occurred on this ascent and the testimony disclosed that from the situs of the accident eastwardly there was an unobstructed view of the roadway for at least one and one-half miles. Photographic exhibits submitted by plaintiff clearly confirm this. There were no witnesses for the plaintiff who observed the collision and accident. One Staples by name, a witness for the plaintiff, testified that he was driving a small International Cab and Chassis (the tractor or front half of a tractor-trailer combine) westwardly in the immediate rear of the decedent's outfit through the Sideling Tunnel. On the descending grade immediately west of the tunnel he decided to pass Metro's tractor-trailer. As he was pulling around this tractor-trailer just at the bottom of the ascending grade he observed the defendant's tractor-trailer outfit in the right-hand lane of the two westbound lanes of travel, and about one-half mile further to the west. At that moment Staples had the impression that defendant's combine was moving very slowly up the ascending grade. He negotiated the passing of the decedent's tractor-trailer and started turning back from the left lane into the right-hand or outside lane of travel when he observed that the defendant's outfit was stopped in the right-hand lane. At this time he was straddling

the two westbound lanes. He turned immediately back into the left lane at a place he estimated was at least five hundred feet east of the stopped outfit of the defendant. He continued on in the left lane at a speed of about forty-five m. p. h. When passing defendant's outfit he observed through the opening between the back of the cab or the tractor and the front wall of the trailer that one man was standing at the right-hand rear of the Long tractor and that another man was either lying or squatting down on the ground in front of the right rear wheel of the tractor and appeared to be reaching under this right wheel. At the time of making these observations Staples stated that he took his foot off the gas pedal and momentarily and *slightly* decelerated his speed. He continued to drive forward several hundred feet in the left lane and then began to turn back into the right-hand lane, and when his tractor was thus on an angle to the right he glanced over his shoulder and observed a cloud of dust and a flash of flames coming from somewhere near the right rear of the defendant's outfit. He immediately applied the brakes to his tractor and to such an extent that his wheels left skid-marks and came to a stop over in the right lane, and about five hundred feet to the west of the front of the defendant's outfit. He then hurried back to the scene of the accident. There he discovered that the decedent's tractor-trailer had hit the right rear of the defendant's unit pushing it forward some thirty-two feet. This observation could be made from rubber tire marks on the roadway leading directly eastward from the rear dual wheels of the defendant's trailer. The decedent's outfit had traveled over into the berm and upon the guardrail to the right of the westbound roadway with the whole front part badly bashed-in, the top of the hood practically sheared off

and the top of the cab crushed flat due to the trailer having rolled up over the cab as a result of the collision. The right rear of the defendant's trailer was smashed-in and only held from falling to the roadway by a tarpaulin. The front end of decedent's outfit had come to a stop at about the right cab door of the defendant's tractor. Wayne J. Metro, the deceased was trapped and pinned in his cab. The outfit had burst into flames starting first at the saddle tank on the right side and located just back at the cab. Because of the fire and the manner in which Metro was pinned in the cab it was found to be impossible to remove him and his body was burnt in the flames. . . .

"Plaintiff's theory upon which the case developed was that defendant's driver of its tractor-trailer violated Sec. 1019 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS Sec. 611 which provides that 'no person shall park or leave standing any vehicle . . . upon the paved or improved or main traveled portion of any highway . . . when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway . . .'

"There was evidence that at the place where defendant's outfit had stopped that the berm of the road out to the guardrail was reasonably on the same grade as the improved roadway and was wide enough to accommodate all or most of the tractor-trailer had it pulled onto the berm. Staples testified that the right wheels of the tractor-trailer of the defendant were located about one foot in from the edge of the concrete. Each of the two westbound lanes he stated were ten feet wide (actually they are twelve feet wide). Plaintiff contends that this was negligent conduct on the part of the defendant; that the decedent's view of this stopped outfit ahead of him and in his lane of travel

was obstructed by Staples tractor which was in between these two units; that when Staples momentarily reduced his speed as he was passing the defendant's outfit that the jury could infer that the decedent had his combine in such a position at the rear of Staples' small tractor that he was confronted with an emergency and that in that emergency he elected to attempt to drive his unit onto the berm to the right of the defendant's outfit, but failed in his endeavor and hence the collision. It is our considered opinion that the plaintiff's proofs are not sufficient to support this theory. When Staples was passing Metro at the bottom of the ascending grade he stated that he could see the defendant's unit further ahead. He never pulled back fully into the right-hand lane. When he pulled back into the left-hand lane in order to pass the defendant's stopped outfit he was almost five hundred feet in its rear and the decedent was further away from it. Staples testified that the top of his cab would be approximately eight feet from the ground. He further stated that the rear of the defendant's tractor-trailer was painted yellow, that its top was about twelve feet above the ground, that it was eight feet wide and that the unit had an overall length of about forty-five feet. When Staples' tractor was in between the two units involved the defendant's outfit was on a considerable higher grade. Young Metro's observation if he were alert and looking ahead would only have been slightly impeded when Staples' tractor was in between the units and further, according to Staples' testimony, the cab seat of the decedent's tractor was substantially on a higher level from the ground than the seat in his cab. Sec. 1002 of The Vehicle Code, 75 PS, Sec. 501 provides, inter alia, that 'no person shall drive any vehicle upon a highway . . . at a speed greater than will permit him to

bring the vehicle to a stop within the assured clear distance ahead.' . . . In *Rich v. Petersen Truck Lines, Inc.*, 357 Pa. 318, the following is stated (pp. 321-2) :

" ' . . . The assured clear distance rule has been the law of Pennsylvania for many years. It was established as a common law principle and imbedded in our law by the above statute. Our courts have called it, "the only safe rule" . . . "inflexible" . . . "fixed and unchangeable" . . . The statute has been applied in many cases as requiring judgment n.o.v. against operators of vehicles who have driven into obstructions on the highway, regardless of the negligence of the person who created the hazard. The rule has been applied to hold plaintiffs guilty of contributory negligence for having driven into obstacles on the highway . . . The assured clear distance rule requires that a driver keep his vehicle under such control that he can always stop within the distance that he can clearly see. What this distance will be will vary according to the visibility at the time and other attending circumstances.'

"While the law does raise a presumption that where a person has been accidentally killed that he was exercising due care for his safety, yet that presumption is overcome where the proofs reasonably establish that the decedent was not regulating his speed to stop within the assured clear distance ahead of him.

"The case of *Griffith v. Weiner*, 373 Pa. 184, was an action in which the plaintiff was the administrator of a deceased motorist . . . [There] it is pointed out that in Grutski v. Kline, 352 Pa. 401 a dead driver was held guilty of contributory negligence as a matter of law in facts somewhat similar to this current proceeding except that there was no other moving vehicles involved such as testified to by Staples. The opinion further quotes from Basel v. Pittsburgh, 350 Pa. 545 as follows (pp. 547-8) :

" 'The facts of this case so clearly show the negligence of decedent that they destroy the presumption of due care, and the court below should have found decedent guilty of contributory negligence as a matter of law.

" 'While ordinarily, where a person has been accidentally killed, the law will presume that he had taken all necessary precautions to assure his own safety, that presumption has no existence as against the certainty that if he had acted more carefully in a particular instance he would not then have died.' . . .

"Two recent cases of the Supreme Court clearly hold that there is to be no relaxation of the ruling that a motorist must regulate his speed so as to permit him to bring his vehicle to a stop within the assured clear distance ahead of him, viz., *Notarianne v. Ross,* 384 Pa. 63, and *Smith v. Petaccio,* 384 Pa. 75 . . . In each of these cases the plaintiff was driving his automobile into or through a short tunnel in daylight. The respective defendant's vehicles had been caused to stop in the tunnels and without any warning lights. The respective plaintiffs crashed into the rear of these vehicles. The explanations for not seeing the stopped vehicles ahead was because of alleged restrictions of vision due to the sudden change from bright daylight to darkness. In both cases it was held that it was the bounden duty of the driver of each vehicle to adjust his speed to stop within an assured clear distance ahead of him. Not having done so they were respectively held guilty of negligence as a matter of law."

Judgment affirmed.