Haines, Appellant, *v.* Dulaney.

Argued November 29, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*W. Robert Thompson*, with him *Robert M. Keener*, and *Thompson and Baily*, and *Sayers, King & Keener*, for appellants.

*Stephen D. Marriner*, with him *John I. Hook, Jr., A. J. Marion, R. Wallace Maxwell, Ewing B. Pollock*, and *Pollock, Pollock & Thomas*, and *Hook and Hook*, for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 14, 1967:

Geraldine Roberts Haines, while operating her automobile in a southwesterly direction on the New Freeport Road, came into collision with a truck.

Harold Dulaney was awarded a contract by the Pennsylvania Department of Highways, to build a new bridge and approaches to the road. Dulaney sub-con-

tracted the stone basing and blacktopping for the approaches to defendant, C. S. Yoder. Yoder contracted with the defendant, Joseph Dursa, to haul amiesite to the job site. Dursa contracted with defendant, Lawrence Hinckle, who furnished a dump truck which was operated on the day of the accident by defendant, Riley Crawford Harn.

On the day of the accident, employees of C. S. Yoder had placed amiesite in a trench across the road, and three to five men were raking the blacktop at the time appellant approached on the New Freeport Road from Jollytown. Defendant Harn had parked his truck on the road, waiting for the blacktopping equipment to be moved into position. The greater portion of the truck was parked on the berm to appellant's left.

Defendant Donald A. Pinelli's truck, driven by Charles Roy Dean, was proceeding toward Jollytown on the New Freeport Road, and because the trench was being covered with blacktop, it was necessary for him to stop his truck alongside the Hinckle truck. The two trucks thus occupied virtually all of the 15-foot wide surface of the road, leaving no room for any other vehicle to proceed. Mrs. Haines approached this scene around a sharp curve to her right, on New Freeport Road. This curve, together with the topography of the road, renders it impossible for motorists traversing the curve in either direction to determine what is on the other side of the curve until they are well within the curve. Mrs. Haines testified that when she came around the curve at a speed of approximately 30 m.p.h. and came upon the trucks parked on the highway, she panicked and ran into the Hinckle truck, thereby sustaining personal injuries and property damage. She and her husband, Victor F. Haines, filed a suit against the various defendants to recover damages.[1]

---

[1] During the pendency of the case, Mrs. Haines died, and her administrator was substituted as party-plaintiff.

At the conclusion of plaintiffs' case, the trial court granted defendants' motion for compulsory nonsuit. Plaintiffs' motion to take off the nonsuit was denied, and this appeal followed.

The court below determined that since Mrs. Haines admitted that her visibility was extremely limited in making the turn, she was guilty of contributory negligence as a matter of law in operating at a speed greater than would permit her to bring the vehicle to a stop within the assured clear distance ahead.[2]

Mrs. Haines had testified: "Well, I knew that this road was under construction, but I thought it had been finished, . . . and there was a very severe curve there, and there were bushes and rocks protruding out at this curve, and I couldn't see the road leading to New Freeport, but I didn't expect it to be blocked."

In *Schwab v. Oesterling & Son, Inc.*, 380 Pa. 1, 108 A. 2d 778 (1954), we said: "The curve was a sharp one and so topographically laid that motorists coming from either direction could not determine until practically in the curve what was on the other side. A blind curve presents grave hazards, and motorists should enter such a curve with the same caution one would skirt a precipice. . . ." This language is particularly apposite to the case at Bar. A motorist may not blindly enter upon a dangerous highway condition without exercising that degree of caution necessary to prevent harm befalling himself or others. See *Rich v. Petersen Truck Lines, Inc.*, 357 Pa. 318, 53 A. 2d 725 (1947). An expert testified that a car going 30 m.p.h. would require a minimal stopping distance of 77 feet, and that the average stopping distance is 101 feet. The court below was, therefore, correct in concluding that where the assured clear distance ahead was some 30 feet, Mrs. Haines was operating at an unsafe speed.

---

[2] See Act of 1959, April 29, P. L. 58, §1002, as amended, 1959, November 19, P. L. 1531, 75 P.S. §1002(a).

Appellants contended that the assured clear distance rule should not apply, inasmuch as Mrs. Haines was confronted by a sudden emergency. The court below effectively rebuts that contention in its opinion as follows: "The sudden emergency, if any in this case, arose from the fact that Geraldine Roberts Haines was operating her automobile at too great a speed to enable her to stop before crashing into the truck, or she was not paying proper attention to the roadway which the existing conditions required. There were no moving objects, such as dust clouds, blinding lights, sudden blocking of the roadway or sudden swerving of other vehicles, in fact, there was no other object in motion than her automobile."

In *Gaber v. Weinberg*, 324 Pa. 385, 188 A. 187 (1936), we said: ". . . the assured clear distance may be long, as on a straight road in bright daylight, or it may be shortened by storm, fog, a curve in the road or other conditions. Whatever it may be, the duty imposed upon the driver is to be able to stop the vehicle safely within that distance." *Janeway v. Lafferty Bros.*, 323 Pa. 324, 185 A. 827 (1936).

Judgment affirmed.

Mr. Justice MUSMANNO dissents.