Koelle *v.* Philadelphia Electric Company,
Appellant.

Argued November 25, 1970. Before BELL, C. J.,
COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John R. McConnell*, with him *David S. Markson* and
*Morgan, Lewis & Bockius*, for appellant.

*Thomas H. Goldsmith*, with him *Goushian, Mooradian & Goldsmith*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 17, 1971:

Appellee, Frederick Koelle, after a jury trial, won a verdict of $15,000 against appellant, Philadelphia Electric Company. Appellant's motions for a new trial and for judgment n.o.v. were denied, and this appeal followed the entry of judgment on the verdict of the jury.

The court below fairly summarized the facts in its opinion as follows:

"Plaintiff was one of three young men, each riding his own motorcycle north on MacDade Boulevard in the vicinity of Glenolden, Delaware County, at approximately 10:30 or 11:00 p.m. on the evening of June 25, 1962. MacDade Boulevard is a highway of two north-

bound and two southbound lanes, the midline of which is marked only by a broken white line without any constructed medial divider.

"The trio halted behind a pair of automobiles for a traffic light at South Avenue, an intersecting street. The light turned green, one of the cars turned off east on South Avenue, the other continued north in the innermost northbound lane of MacDade Boulevard, and plaintiff followed in the same lane. His two companions were still farther back. At a point the plaintiff described as three-quarters of a block, one of his companions as seventy-five to one hundred yards, and a policeman investigator as two squares or four to five hundred feet north of the intersection, plaintiff saw the car in front of him 'veer sharply' to the left, across the marked midline, into the nearest southbound lane, to pass around what plaintiff suddenly saw to be an excavation across the highway in the lane he was travelling, with a mound of dirt completely blocking the other northbound lane to plaintiff's right and extending up on the sidewalk. Four or five feet of the highway surface closest to the midline in the lane of plaintiff's travel remained unbroken. Southbound traffic appeared immediately after the preceding automobile had made its way around the obstruction, and plaintiff saw no way to follow, left of the obstacle, without risking collision with one of the cars approaching in the opposite direction.

"He braked, but felt his motorcycle 'fishtail' or weave beneath him, felt it also lose traction on the grit strewn on the road surface south of the hole, so that he was unable to stop, and on the brink of the excavation jumped straight up off the motorcycle. The motorcycle went into the hole, but plaintiff cleared the obstruction, landing on his hands on the highway beyond, an impact which caused him a seriously broken left wrist. . . .

"Plaintiff as a verdict winner becomes entitled, for determination of a motion for judgment n.o.v., to have all of the evidence and the reasonable inferences therefrom viewed in the light most favorable to him: Handfinger v. Philadelphia Gas Works, 439 Pa. 130, 266 A. 2d 769. Among the determinations thus to be made in plaintiff's favor is that, while there were five metal barricades around the hole, each with two warning lights designed to emit intermittent blinks or flashes, only one of the ten lights was operating, and that on one of the three barricades located north, not south, of the hole."

The electric company urges that the appellee's own testimony, to the effect that he was driving his motorcycle at thirty miles per hour while only one car length behind the car in front of him, is grounds for declaring that appellee was contributorily negligent as a matter of law. The company relies on the assured clear distance rule, long a common law principle in Pennsylvania, and now made statutory by the Act of April 29, 1959, P. L. 58, §1002, as amended, 75 P.S. §1002(a), which reads as follows: ". . . Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

In our view, the trial court's refusal to grant judgment n.o.v. was correct. However, the trial court's charge on the assured clear distance ahead rule was so confusing as to warrant the awarding of a new trial.

Our most recent discussion of the assured clear distance rule is contained in our opinion in *Stano v. Rearick*, 441 Pa. 72, 271 A. 2d 251 (1970), where we quoted at length from *McElhinny v. Iliff*, 436 Pa. 506, 509-510, 260 A. 2d 739, 740 (1970):

"The 'assured clear distance ahead rule' finds its statutory genesis in The Vehicle Code, Act of May 1, 1929, P. L. 905, 973, §1002, as amended, which provides in part: '. . . no person shall drive any vehicle, upon a highway . . . *at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.*'

"In Enfield v. Stout, 400 Pa. 6, 161 A. 2d 22, this Court said (page 11) : 'For many years under the law of Pennsylvania it has been the rule that the driver of an automobile on a public highway must be alert to have it under such control that he can stop it within the "assured clear distance ahead". This requires that the driver operate his automobile at such a rate of speed and *in such a manner that he can always stop it within the distance that he can clearly see*: Metro v. Long Transportation Company, 387 Pa. 354, 127 A. 2d 716 (1956). By this is meant the *range of the driver's vision* which, of course, *in darkness is the scope of his headlights*: Weibel v. Ferguson, 342 Pa. 113, 19 A. 2d 357 (1941).'

"See, also, Griffith v. Weiner, 373 Pa. 184, 95 A. 2d 517, in which the Court, after quoting the above underlined language, said (page 187) : ' "What this distance will be will vary according to the visibility at the time and other attending circumstances." ' " (Emphasis in original.)

One of the "attending circumstances" which must be analyzed when determining whether there was a violation of the "assured clear distance ahead rule" which would constitute contributory negligence and bar the plaintiff's recovery, is the "inherent visibility of the

object to be seen." *Stano v. Rearick, supra; Colonial Trust v. Elmer C. Breuer, Inc.,* 363 Pa. 101, 69 A. 2d 126 (1949). *Colonial Trust* concerned a collision with a coil of spring and tarpaulin four feet in diameter and two and one-half feet high. The plaintiff in that case had testified that he made no effort to slow down until he was ten feet from the object because until he got that close, he had believed that the object was only a patch in the road.

In *Colonial Trust* we said: "It would seem wholly unreasonable and unjust to hold that the operator of a motor vehicle was guilty of a violation of the [assured clear distance rule] and therefore subject to . . . the characterization of his conduct as contributorily negligent because he did not lessen the speed of his car in the face of what was actually an obstruction on the roadway but was so camouflaged or deceptive in appearance that even a reasonably careful driver would not have been able to *realize* that it was such until he was actually upon it." (Emphasis in original.)

The trial court in the instant case charged as follows on this issue: "However, in applying the rule of stopping within the assured clear distance the inherent visibility of the thing to be seen ahead within the assured clear distance must be considered. Stated another way, has the presence of an obstruction been obscured by an intervening agency, such as a car in front of your own, so that the obstruction suddenly appears to the approaching driver who could do nothing under the circumstances to avoid the obstacle? You may ask yourselves was the plaintiff unable to see the danger on the highway at the time of crisis in this case because of the vehicle ahead of him. . . ."[1]

---

[1] Appellant's counsel took exception, explaining at sidebar that the court's charge did not allude to appellant's contention that appellee was negligent in following too closely behind the other

The appellant argues that the effect of the above-quoted portion of the charge is to carve out an exception to the assured clear distance rule for drivers who are following so closely behind the vehicle in front of them that their vision is obscured. Although the first portion of the above-quoted charge was correct in emphasizing the importance of the inherent visibility of the thing to be observed, the remainder of the court's charge, where it appeared to say that when an intervening car obscured the driver's vision, there would be no violation of the assured clear distance rule was clearly erroneous.

In addition to a statutory enactment of the assured clear distance rule, the Legislature has also spoken on another standard of due care in the operation of motor vehicles which is applicable to this case. The Act of April 29, 1959, P. L. 58, §1010, as amended, 75 P.S. §1010(a) reads as follows: ". . . The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle, and the traffic upon the condition of the highway."

If it is negligent for a driver to follow the car in front of him too closely, it would be absurd to permit a driver to use the result of this negligence as an excuse under the assured clear distance rule. Since the court's charge to the jury implied that the appellee could do just that, appellant is entitled to a new trial.

However, the appellee's testimony to the effect that he was driving at a speed of thirty miles per hour, while only a car length behind the car in front of him, even though he admitted that at that speed his motorcycle would require fifty-five feet to stop, does not

car so that when it did turn away, it was too late for him to do anything. The court refused to clarify its charge, believing that it had adequately covered the issue.

mean that he was contributorily negligent as a matter of law. Nor was the court's charge to the jury on the issue of contributory negligence incorrect as the appellant alleges.

The court's charge on contributory negligence reads as follows: "If after consideration of all of the evidence you determine that some negligence of the plaintiff affirmatively appears, then you *may* find contributory negligence and a verdict for the defendant." (Emphasis supplied.) According to the appellant, the use of the permissive "may" was reversible error because any negligence on the part of the appellee would require the jury to deny him recovery.

Appellant's argument that it was entitled to a judgment n.o.v. and its argument that the court erred in its charge on contributory negligence are both without merit. A plaintiff's negligence will bar his recovery only if it is a proximate cause of the accident in which he was injured. *Cebulskie v. Lehigh,* 441 Pa. 230, 272 A. 2d 171 (1971); *Argo v. Goodstein,* 438 Pa. 468, 265 A. 2d 783 (1970); *Hamilton v. Fean,* 422 Pa. 373, 221 A. 2d 309 (1966); *McFadden v. Pennzoil Company,* 341 Pa. 433, 19 A. 2d 370 (1941). The statement in *Crane v. Neal,* 389 Pa. 329, 332-33, 132 A. 2d 675 (1957), upon which appellant relies, to the effect that in Pennsylvania ". . . a plaintiff is guilty of contributory negligence and cannot recover if his negligence contributed in any degree . . . however slight, to the injury" is, as we said in *Cebulskie,* incorrect and inconsistent with prior Pennsylvania law on the subject. In order to be contributory negligence which bars recovery, the negligence must contribute in a proximate way to the accident.

We have long held that "proximate cause is peculiarly a jury question." *Coyne v. Pittsburgh Rwys. Co.,* 393 Pa. 326, 334, 141 A. 2d 830 (1958). In the instant case, a jury could have found that the appellee's negli-

gence in following too closely was not a proximate cause of the accident because even if there were no car in front of him, appellee would not have been able to see the electric company's excavation in sufficient time or at a sufficient distance to stop his motorcycle. Such a finding would be amply supported by the appellee's testimony that the hole in the road was not seen by him until he was approximately thirty feet from it, and by the testimony concerning the actions of the car which preceded the appellee's motorcycle. That car, also traveling at thirty miles per hour, continued straight toward the hole unitl it suddenly swerved left into the oncoming traffic lane when it was only one car length away from the hole. Neither its brake lights nor its turn signal ever registered indicating that the driver of that car, just like the appellee, did not see the electric company's dimly lit excavation site until he got within thirty feet of it. Under such circumstances, in light of the exception enunciated in cases like *Stano v. Rearick, supra,* and *Colonial Trust Co. v. Breuer, Inc., supra,* the jury could have found that the proximate cause of appellee's accident was appellant's negligence in leaving an excavation site with inherently poor visibility, and that his violation of the assured clear distance rule was not a proximately contributory factor. On review such a finding would not be disturbed.

Nevertheless, as we have already explained, because the court's charge permitted the jury to consider the intervening car as well as the inherently poor visibility of the hole in determining whether the appellee violated the assured clear distance rule, we must reverse and remand for a new trial.

Judgment reversed and new trial granted.

Mr. Chief Justice BELL, Mr. Justice EAGEN, Mr. Justice ROBERTS concur in the result.

44

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.