386 A.2d 45

**David Herrick BROWN, a minor by his guardian, Herrick J. Brown and Herrick J. Brown, Appellants,**

**v.**

**Eric James SCHRIVER, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1977.

Decided April 28, 1978.

Thomas A. Ehrgood, Lebanon, for appellants.

D. Plank, Soren P. West, Lancaster, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in instructing the jury on the sudden emergency doctrine. We agree. Therefore, we reverse the order of the lower court denying appellant's post-verdict motions.

On March 2, 1976, appellant filed a complaint in trespass in the Lebanon County Court of Common Pleas against appellee. The complaint alleged that on February 7, 1975, appellee negligently lost control of his car while making a turn on Fonderwhite Road in South Lebanon Township and crashed into a tree. As a result, appellant, a passenger in the car, suffered serious injuries. On May 11, and 12, 1976, the lower court conducted a trial at which the parties presented the following testimony.

Appellee, called by appellant's attorney as on cross-examination and later called by his own attorney on direct examination, testified that at 10:30 p.m., on February 7, 1976, he and appellant attended a basketball game at Cedar Crest High School in Lebanon County. After the game, appellee agreed to drive appellant and two other passengers to a fast food restaurant. Appellant sat in the right rear seat of appellee's 1972 Fiat coupe. Appellee proceeded east on Linden Road, a narrow, twisting road with an unposted speed limit of 55 miles per hour. The weather was clear, and there was no ice or snow on the road. Linden Road curves into Fonderwhite Road at a 45–55 degree angle to the right. Linden Road declines towards the curve at a slope of approximately 15 degrees. After negotiating this curve, appellee planned to proceed south on Fonderwhite Road, a two lane 22 foot wide rural road with a macadam surface. Appellee testified that he was traveling at 40–45 miles per hour when he encountered the curve leading into Fonderwhite Road. As he went into the turn, he braked. His car then "slipped across to the other lane on some gravel and

then [he] lost control and went off the road." Appellee did not see this gravel prior to losing control. His car cut through some barbed wire, entered a field, and then struck a tree. After the accident, appellee told a police officer that he had been going too fast for the gravelly conditions that existed on the Linden-Fonderwhite Road curve.

Police Officer Robert Dengler testified that he investigated the February 7, 1976 accident. According to Dengler, the night was clear and the road conditions were generally dry with an occasional patch of snow or ice. Although Officer Dengler did not observe any snow or ice on the Linden-Fonderwhite Road curve, he stated that there might have been some gravel on this portion of the highway as a result of cindering after a snowfall. There were no control signs at the Linden-Fonderwhite curve, and the speed limit remained at 55 miles per hour. While Officer Dengler did not discern any skid marks on the travelled portion of the road, he did find tire marks in a gutter on the east side of Fonderwhite Road.[1] These tire marks continued in the gutter for a distance of nearly 122 feet. Further tire marks revealed that when appellee finally managed to extricate his vehicle from the gutter, he careened into a tree in a field adjacent to Fonderwhite Road. When Officer Dengler questioned appellee after the accident, appellee admitted, without any elaboration, that he was going too fast for the curve.

Appellant testified that he was a passenger in the right rear seat of appellee's vehicle at the time of the accident. He did not notice any snow or ice on the roads which appellee travelled. While he observed the speedometer "pointing straight up" as appellee drove on Linden Road, appellant did not recollect whether appellee was in fact speeding or if any of the vehicle's occupants had asked appellee to slow down. Appellant stated that he was not concerned for his safety until the car left the road and severed the barbed wire. As a result of the accident, appellant suffered extensive facial and stomach injuries.

1. If appellee's car in fact implanted these tire marks, then his car had crossed to the wrong side of the road.

■ At the close of testimony, both parties submitted points for charge. Appellee's attorney asked the lower court to instruct the jury on the doctrine of sudden emergency. More particularly, he requested the court to charge the jury that if appellee unexpectedly encountered gravel or cinders without any warning on the curve leading into Fonderwhite Road and if this dangerous condition caused appellee to lose control of his vehicle, then the jury must find for appellee. Over appellant's objection, the lower court agreed to read a modified version of the proffered instruction. Subsequently, in its charge to the jury, the court stated: " . . . the defendant contends that he should have the benefit of what we call loosely in the law the doctrine of sudden emergency. Now, that rule is stated as follows: Where one finds himself in a position of danger which was not the result of his own negligence, he will not be held responsible if he makes a mistake of judgment in extricating himself from the dangerous situation in which he finds himself. So to benefit from this rule, first of all, you must find that there was a dangerous condition, and you must further find that the defendant was put into this situation through no negligent conduct of his own. And if you find that, then, of course, he would be excused from making any mistake of judgment that he may have made in getting out of this dangerous situation." At the conclusion of the court's charge, appellant's attorney excepted to the sudden emergency instruction on the ground that it did not apply to the evidence presented in the case.[2] The jury returned a verdict for appellee, and the lower court denied appellant's post-verdict motions. This appeal followed.

2. Appellant's attorney did not object to the *wording* of the sudden emergency instruction; he only objected to the relevancy of the charge as a whole. In his brief to our Court, appellant argues that even if our Court deems a sudden emergency charge appropriate in the instant case, the lower court still should have tailored the instruction to the specific testimony offered by the parties. Because appellant did not raise this objection before the trial court, we will not consider it now. *See Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Appellant contends the lower court erred in instructing the jury that the "sudden emergency" doctrine could apply to the instant case. More specifically, appellant asserts that the sudden emergency charge confused and distorted the jury's consideration of the controlling issue in the case: did appellee contravene the "assured clear distance ahead" rule? To understand this contention, we must review the interrelationship between the "assured clear distance ahead" rule and the "sudden emergency" doctrine. Fortunately, in *Unangst v. Whitehouse*, 235 Pa.Super. 458, 344 A.2d 695 (1975), our Court recently and comprehensively studied this interrelationship. For the sake of expediency, we will quote the germane portion of *Unangst v. Whitehouse* at length:

"Originally a common law principle, the 'assured clear distance ahead' rule is a part of The Vehicle Code, Act of May 1, 1929, P.L. 905, § 102, *as amended*, 75 P.S. § 1002 (1971), which provides, *inter alia*, that 'no person shall drive any vehicle, upon a highway . . . at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.'[3] The assured clear distance ahead rule has been held to require that a driver operate his vehicle in such a manner that he can always stop within the distance he can *clearly see*. [Emphasis in original] *Enfield v. Stout*, 400 Pa. 6, 161 A.2d 22 (1960); *Metro v. Long Transp. Co.*, 387 Pa. 354, 127 A.2d 716 (1956); *Rich v.*

3. Our quotations from 75 P.S. § 1002 in *Unangst* omitted some statutory language pertinent to the instant case. 75 P.S. § 1002(a) provided *in toto*:

"*Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed*, not greater than nor less than is reasonable and proper, *having due regard to the traffic surface*, and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." (Emphasis supplied).

After the date of appellee's accident, our legislature redrafted the Vehicle Code. *See* The Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81, § 1 et seq., eff. July 1, 1977; 75 Pa.C.S. § 101 et seq. 75 Pa.C.S. § 3361 embodies the presently applicable version of the "assured clear distance ahead" rule.

*Petersen Truck Lines, Inc.,* 357 Pa. 318, 53 A.2d 725 (1947). Otherwise stated, the rule requires that such control be maintained as will enable a driver to stop and avoid obstructions that fall within his vision. *Filer v. Filer,* 301 Pa. 461, 152 A. 567 (1930).

"It is apparent that this distance, the range of a driver's vision, may vary according to the visibility at the time and other attendant circumstances. *Stark v. Fullerton Trucking Co.,* 318 Pa. 541, 179 A. 84 (1935), and that it may be 'long, as on a straight road in bright daylight, or it may be shortened by storm, fog, a curve in the road or other conditions,' *Gaber v. Weinberg,* 324 Pa. 385, 388, 188 A. 187, 188 (1936). At night, the assured clear distance is the scope of the driver's headlights, *Weibel v. Ferguson,* 342 Pa. 113, 19 A.2d 357 (1941); *Hutchinson v. Follmer Trucking Co.,* 333 Pa. 424, 5 A.2d 182 (1939), and the motorist driving at night must take care not to drive at a speed that is faster than would allow him to stop inside that range of vision. Where vision is so obscured by darkness, fog, smoke, steam or other limiting factors that the operator can see nothing, then there is no assured clear distance ahead and even a speed of five miles per hour may violate the rule. *See Rich v. Petersen Truck Lines, Inc.,* supra.

"*When an obstacle is encountered by a driver which is within his line of travel, the distance to the obstacle becomes the time and distance limitation at the moment that the obstacle comes into view. The 'driver must carefully watch so that he can see, if this is reasonably possible, any obstacle in his way, and can stop before a collision with it.'* [Emphasis supplied]. *Farley v. Ventresco,* 307 Pa. 441, 445, 161 A. 534, 535 (1932). *See Griffith v. Weiner,* 373 Pa. 184, 95 A.2d 517 (1953); *Stark v. Fullerton Trucking Co.,* supra.

"The obstacle must be discernible, however. The rule has been held inapplicable where the object ahead of the driver is so deceptive in appearance or camouflaged that even a reasonably careful driver could not realize the object was there until he was upon it. *Stano v. Rearick,* 441 Pa. 72, 271 A.2d 251 (1970); *Maranca v. Philadelphia,* 394 Pa. 531, 147

A.2d 413 (1959); *Colonial Trust Co. v. Elmer C. Breuer, Inc.,* 363 Pa. 101, 69 A.2d 126 (1949). A driver may be likewise excused from the rule where temporarily blinded by oncoming lights which tend to obscure the existence of the obstacle. *Farley v. Ventresco, supra.*

"Moreover, where a sudden and clear emergency arises *inside* the range of the previously assured clear distance, the rule has been held inapplicable. *Stark v. Fullerton Trucking Co.,* supra; *Hollern v. Verhovsek,* 220 Pa.Super. 343, 287 A.2d 145, *allocatur refused,* 220 Pa.Super. *xxxvii* (1971); *McElroy v. Rozzi,* 194 Pa.Super. 184, 166 A.2d 331 (1960); *allocatur refused,* 194 Pa.Super. *xxvii* (1961); *Safeway Truck Lines, Inc. v. Mercury Electric Products Mfg. Corp.,* 371 F.Supp. 269 (M.D.Pa.1974). *See Haines v. Dulaney,* 424 Pa. 608, 227 A.2d 625 (1967); *Fleischman v. Reading,* 388 Pa. 183, 130 A.2d 429 (1957); *Mihalic v. Texaco, Inc.,* 377 F.2d 978 (3d Cir. 1967). *A sudden and clear emergency may be a dust cloud, a moving object, a sudden blocking of the road, the sudden swerving of other vehicles or the aforementioned blinding lights. Haines v. Dulaney, supra.*

■ *"Where a sudden emergency arises, this Court has held that a court may not charge the jury as to the assured clear distance rule. Reifel v. Hershey Estates,* 222 Pa.Super. 212, 295 A.2d 138 (1972). *In such a circumstance the driver has already mentally cleared the distance ahead and the sudden interjection of an instrumentality within the range thereof is not within the specific duty imposed by the rule."* (Emphasis supplied). Supra, 235 Pa.Super. at 463–65, 344 A.2d at 698. *See also Reifel v. Hershey Estates, supra.* In sum, under *Unangst v. Whitehouse,* the "assured clear distance ahead" rule applies to static or essentially static objects [4] while the "sudden emergency" doctrine only applies to

4. In *Unangst v. Whitehouse,* we reconciled our Supreme Court's decision in *Enfield v. Stout,* 400 Pa. 6, 161 A.2d 22 (1960) with this distinction between fixed and moving objects. In *Enfield,* a truck proceeded across an intersection in the path of an oncoming car. We noted that the truck in *Enfield* was essentially a static object because its lateral movement did nothing to reduce the assured clear distance ahead for the oncoming car. A similar rationale explains

moving instrumentalities suddenly and unexpectedly thrust into a driver's path of travel.[5]

We believe that the instant case properly involves consideration of the "assured clear distance ahead" rule rather than the "sudden emergency" doctrine. The alleged gravel on the Linden-Fonderwhite Road curve constituted a stationary object rather than a moving instrumentality suddenly and unexpectedly thrust into appellee's path of travel. *See Unangst v. Whitehouse*, supra. Thus, the salient issue in the instant case is whether appellee drove his " . . . vehicle . . . at a careful and prudent speed, not greater than nor less than is reasonable and proper, *having due regard to the traffic surface*, . . . and [not] at a speed greater than [would] permit him to bring the vehicle to a stop within the assured clear distance ahead." The Vehicle Code, 75 P.S. § 1002, supra (emphasis supplied). The court should have instructed the jury to consider whether appellee, paying due regard to the traffic surface, should have and could have seen the alleged loose gravel before slipping upon it. Also, the court should have instructed the jury to consider whether appellee had a duty to contemplate the

the applicability of the assured clear distance ahead rule to cases in which an object is moving in the same direction as the operator of the car.

5. Our survey of Pennsylvania case law discloses only one case which has intimated that a stationary road condition or obstacle may create a situation appropriate for the invocation of the "sudden emergency" doctrine. In *Sowizral v. Hughes*, 333 F.2d 829 (3rd Cir. 1964), a Third Circuit Court of Appeals panel suggested, in dictum, that an isolated icy spot could give rise to a sudden emergency. Stated in the abstract, this proposition does not commend our approval. We also note that the Third Circuit panel did carefully attempt to narrow the impact of its observation by adding that: "[a]n individual must anticipate some emergencies and must be prepared to meet them, when engaging in an activity in which they are likely to arise. . . . Indeed, the driver on the highway must make some preparation to meet a host of vicissitudes which include many that are not specifically foreseeable. . . . " supra at 836 (footnotes omitted). The appellant in *Sowizral* did not argue that the ice spot constituted a "vicissitude" for which appellee should have been mentally prepared nor did he specifically object to the reading of a sudden emergency charge. Thus, the Third Circuit did not definitely decide whether an alleged icy spot did in fact create a sudden emergency situation.

possibility of loose gravel on a curve in a macadam road during winter and when snow and ice were on the ground near the highway. Instead, the lower court inappropriately interjected the "sudden emergency" doctrine into the instant case. Because no testimony suggested the sudden interjection of a moving object into appellee's line of travel, this sudden emergency charge could only have confused and distorted the jury's deliberations.[6] Therefore, we vacate the order of the lower court and remand for a new trial.

Order vacated and case remanded for a new trial.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

---

6. Appellee and the lower court argue that *Kenworthy v. Burghart*, 241 Pa.Super. 267, 361 A.2d 335 (1976), supports the sudden emergency charge in the instant case. In *Kenworthy*, our Court sustained an *unavoidable accident* instruction when the defendant testified that although he was driving at a very slow rate of speed, he was unable to see a patch of ice until he was practically on top of it. He then skidded on the ice and lost control. Quite simply, *Kenworthy* does not explain why a sudden emergency charge, rather than an unavoidable accident charge, was appropriate in the case at bar. Moreover, the appellant in the instant case, unlike the defendant in *Kenworthy*, did not testify that he was *unable* to see the alleged dangerous road condition before he lost control. Instead, appellee merely testified that he did not see the purported loose gravel. Therefore, *Kenworthy* does not sanction a sudden emergency charge in the instant case.