## Lankalis v. McClanahan

*Frank A. Baker, III*, for plaintiff.
*Alan D. Williams, Jr.*, for defendants.

LAVELLE, *P.J.*, December 10, 1982 — This case arises from a collision involving an automobile driv-

en by plaintiff and a truck driven by defendant Orville McClanahan which occurred on March 10, 1977. Defendant D. F. Bast, Inc. is owner of the truck and employer of defendant McClanahan.

A jury hearing the case on January 22 and 23, 1981 returned a verdict for the defendants. Before us is plaintiff's motion for a new trial.

## I. FACTS

The evidence reveals that plaintiff, travelling in a southerly direction along Legislative Route 13006, reached the intersection of Route 443 on the morning of March 10, 1977, at approximately 9:00 a.m. At the same time, defendant Orville McClanahan was approaching the same intersection, heading west along Route 443.

The intersection is located at Normal Square in Mahoning Township, Carbon County. It is controlled by a blinking traffic light, which flashes red along Legislative Route 13006 and yellow along Route 443. There is also a stop sign along Route 13006.

Plaintiff testified that he brought his vehicle to a complete stop a few feet from the mouth of the intersection. After waiting for traffic to clear, plaintiff looked to his right and left. To his left, his unobstructed view extended for a distance of 300 feet. Seeing no approaching traffic, he proceeded to turn left onto Route 443.

Plaintiff's last recollection prior to colliding with defendant's truck was of completing his turn and being in the eastbound lane of Route 443. He stated that he never saw defendant McClanahan, and was unable to testify as to where on the roadway the accident occurred.

Alfred Baldwin testified on plaintiff's behalf that he observed plaintiff's vehicle approach the inter-

section along Legislative Route 13006, and proceed onto the eastbound lane of Route 443, to a point just beyond the intersection. He did not observe plaintiff bring his vehicle to a stop at the intersection, nor did he witness the actual collision. In fact, he neither saw nor heard defendants' truck prior to impact.

Plaintiff's final witness, Edward Kennedy, testified that he was driving east along Route 443 at the time of the accident. He had proceeded approximately 80-90 yards beyond the intersection of Legislative Route 13006 when he first observed defendant McClanahan's truck, approaching him from a distance of about 100 yards. Thus, defendant McClanahan was at this point approximately 180-190 yards from the intersection.

It was Mr. Kennedy's observation that defendant McClanahan was travelling at an "extremely excessive rate of speed", which he estimated to be between 65 and 70 miles per hour. As defendant McClanahan approached him, Mr. Kennedy heard the truck's brakes squeal and saw the load of steel I-beams secured to defendant's flatbed trailer shift. The sight of the I-beams swinging caused Mr. Kennedy to bring his car to a stop in his lane of traffic.

The remainder of Mr. Kennedy's observations were made through his rear view mirror. He watched the beams continue to shift, while the truck became, in Mr. Kennedy's words, "more disoriented", with the cab and the trailer in "erratic" positions.

Meanwhile, Mr. Kennedy noticed plaintiff come to the intersection and complete his turn onto the westbound lane of Route 443. He did not, however, observe plaintiff's stop at the intersection. According to Mr. Kennedy's testimony, plaintiff was completely in the eastbound lane and slightly east of the intersection when the collision occurred.

Defendants produced five eyewitnesses to the accident, Terri Rex, Bruce Steigerwalt, Alan Fronheiser, Michael Pascoe and Archie Stein. All testified that impact occurred in the westbound lane of Route 443 within the intersection of Legislative Route 13006. In addition, Gertrude Stein, a passenger in the car driven by her husband, Archie Stein, testified that, while she did not observe the collision, she did watch plaintiff proceed onto Route 443 without stopping at the intersection of Legislative Route 13006.

David J. Shorr, a professional engineer qualified as an expert in the field of highway safety and accident reconstruction, testified on defendant's behalf. In response to the facts supplied in a hypothetical question posed by defense counsel, Professor Shorr concluded that defendants' truck at no time left its own westbound lane prior to impact. Professor Shorr further testified with reasonable engineering certainty that impact occurred within the intersection, in the westbound lane of Route 443. At this point, he opined plaintiff's car was slightly in the eastbound lane, but primarily in the westbound lane.

According to Professor Shorr, photographic evidence in the case precluded the possibility of sideswipe damage to plaintiff's car. It was his opinion that there was not a broadside hit on plaintiff's vehicle. Rather, impact was at an angle, although Professor Shorr was unable to calculate the exact size of the angle.

Also called as a witness for the defendants was David A. Ebbert, Mahoning Township Chief of Police. Chief Ebbert arrived at the scene of the accident within minutes of the collision. It was his opinion, based upon debris and marks on the highway, that the point of impact was approximately three-

and-one-half feet north of the centerline in the westbound lane of Route 443, at the center of Legislative Route 13006.

Defendant McClanahan testified that the intersection of Legislative Route 13006 first came into his view from approximately 2,000 feet away as he approached from the east along Route 443. At this point, he was travelling approximately 40 to 45 miles per hour, with no traffic between his truck and the intersection.

When defendant McClanahan was within 200 feet of the intersection, he first saw plaintiff's car. At this point defendant McClanahan was travelling at a speed of 30 to 35 miles per hour. Plaintiff, meanwhile, was 2 car lengths from the intersection of Route 443, approaching from the north along Legislative Route 13006.

According to defendant McClanahan, plaintiff simply continued into the intersection without stopping. When plaintiff entered the intersection, defendant McClanahan was approximately 100 feet away. At this point, he applied his brakes and turned to the right. By the time he turned to avoid hitting plaintiff, however, his truck was already in the intersection.

Defendant McClanahan's testimony was that plaintiff entered the intersection just before his truck[1] It was not until he himself entered the intersection that defendant McClanahan knew a collision with plaintiff's car was inevitable. At the point of impact, defendant McClanahan testified that plaintiff's car was blocking his own lane of travel.

---

[1] Defendant McClanahan originally testified that the two vehicles entered the intersection simultaneously. The difference, however, based on defendant's testimony as to his speed, could not have been more than a fraction of a second.

## DISCUSSION

The sole issue before us[2] is whether we erred in refusing to charge the jury on the assured clear distance rule. Based upon a thorough review of the trial record and careful consideration of applicable case law, we conclude that our refusal to so charge was correct.

Originally, a common law principle, the assured clear distance rule has been codified by the Vehicle Code, which provides, inter alia, that "no person shall drive a vehicle. . . at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." 75 Pa.C.S.A. §3361.[3] The rule requires that a driver operate his vehicle in such a manner that he can always stop within the distance he can clearly see. Enfield v. Stout, 400 Pa. 6, 161 A.2d 22 (1960); Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 53 A.2d 725 (1947). Otherwise stated, a driver must maintain such control over his vehicle as will permit him to stop and avoid obstructions that fall within his vision. Filer v. Filer, 301 Pa. 461, 152 A. 567 (1930).

A well-established exception to this rule occurs when a sudden and clear emergency arises inside

---

2. Plaintiff listed certain other reasons in support of his motion for a new trial. These, however, were neither briefed nor argued and must therefore be considered withdrawn.

Also, defendants requested, by way of briefs, that plaintiff's Motion be dismissed for failure to have timely petitioned for preparation of the trial record in accordance with Carbon County Rule 281 (2). This issue, however, is now moot. Plaintiff's petition for an order nunc pro tunc was granted and the notes of testimony were transcribed.

3. At the time of this accident, the controlling provision of the Vehicle Code was the Act of April 29, 1959, P.L. 58, §1002. That Act is, in relevant part, virtually identical to §3361, which became effective July 1, 1977.

the range of the previously assured clear distance. Stark v. Fullerton Trucking Co., 318 Pa. 541, 179 A. 84 (1935). "A sudden and clear emergency may be a dust cloud, a moving object, a sudden blocking of the road, the sudden swerving of other vehicles or. . . blinding lights. Haines v. Dulaney, 424 Pa. 608, 227 A.2d 625 (1967)." Unangst v. Whitehouse, 235 Pa. Super. 458, 465, 344 A.2d 695, 698 (1975). See also Brown v. Shriver, 254 Pa. Super. 468, 386 A.2d 45 (1978).

Based upon the facts recited supra, the court instructed the jury in the instant case on the sudden emergency doctrine. The propriety of that instruction has not been challenged.

In a given factual situation, charges on the assured clear distance rule and the sudden emergency doctrine will be mutually exclusive. Reifel v. Hershey Estates, 222 Pa. Super. 212, 295 A.2d 138 (1972); Sullivan v. Wolson, 262 Pa. Super. 397, 408, 396 A.2d 1230, 1236 (1978). We need not address, however, the question of whether this was such a case. Rather, plaintiff's motion for a new trial can be disposed of based on an additional exception to the assured clear distance rule.

In Unangst v. Whitehouse, 235 Pa. Super. 458, 465-466, 344 A.2d 695, 699 (1975), the Superior Court noted that:

"The assured clear distance rule has been held inapplicable where the obstacle is an oncoming vehicle. Long. v. Pennsylvania Truck Lines, 335 Pa. 236, 5 A.2d 224 (1939); See Greene v. Morelli Brothers, 463 F. 2d 725 (3d Cir. 1972). In the oncoming vehicle circumstance the assured clear distance is being lessened by two parties instead of one and it is not really in the sole control of either party. The rule is logically inapplicable to that situation. See Cerny v. Domer, 13 Ohio St. 2d 117, 235 N.E. 2d 132 (1968)."

Applying this law to the facts of the instant case, we note that plaintiff, in support of his motion, relies most heavily on the testimony of Edward Kennedy. Mr. Kennedy, plaintiff's only eyewitness to the actual collision, said he was at least 80 to 90 yards away from the point of impact, and was watching through his rear view mirror, with another car between his own and the intersection. Although he testified that he witnessed the accident, he never saw plaintiff stop before entering the intersection.

Neither plaintiff nor his only other witness, Alfred Baldwin, testified as to where the two vehicles collided. Both, however, testified that plaintiff had completed his turn onto Route 443 and was proceeding in the eastbound lane prior to impact. On this point, their testimony corroborates Mr. Kennedy.

Mr. Kennedy not only observed plaintiff successfully negotiate the left turn onto Route 443, but continued to watch the vehicles of plaintiff and defendant move along their respective paths. At the point of impact, plaintiff was, according to Mr. Kennedy, safely in his proper lane of travel.

This testimony plainly describes what can only be considered the prelude to a wrong side of the road headon collision. None of the plaintiff's witnesses placed plaintiff in the intersection at the point of impact. Rather, all accounted for plaintiff's safe progress at least up to the point where plaintiff completely cleared the intersection. The fact that only one witness was able to testify as to what happened beyond that point is of no moment. When plaintiff cleared the intersection, the vehicles, according to plaintiff's theory, were coming toward each other, and defendant's vehicle swerved over to plaintiff's lane of travel and struck him.

The requested jury instruction was, therefore, inapplicable by virtue of the oncoming vehicle excep-

tion to the assured clear distance rule. Plaintiff, in his efforts to bring himself within the purview of the assured clear distance rule, instead profferred testimony which established the applicability of an exception to that rule.

At the conclusion of testimony in the instant case, the court had before it no evidence which would have supported an assured clear distance instruction. Defendants' testimony indisputably established the applicability of the sudden emergency doctrine. The theory of plaintiff's case, on the other hand, fit squarely within a well-recognized exception to the assured clear distance rule.

As a result, the court instructed the jury on the general duty of care to be observed by a driver in defendant McClanahan's circumstances. Included in the Court's instruction was a charge that, if the jury believed the testimony of Mr. Kennedy, it could find that defendant McClanahan was negligent. Plaintiff was entitled to nothing more.

Accordingly, based upon the foregoing reasons, it is hereby Ordered and Decreed that plaintiff's motion for a new trial be denied.